**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION**

| | | |
|---|---|---|
| MOTIVA PATENTS, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | |
| SONY CORPORATION | § | **CIVIL ACTION NO. 9:18-CV-00180-JRG-KFG** |
| | § | (Lead Case) |
| | § | |
| HTC CORPORATION, | § | **CIVIL ACTION NO. 9:18-CV-00179-JRG-KFG** |
| | § | |
| *Defendants*. | § | (Member Case) |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is the Motion to Dismiss Plaintiff's Original Complaint Under Rule 12(b)(6) ("the Motion to Dismiss") filed by Defendant HTC Corporation ("HTC"). (Dkt. No. 18). In the Motion to Dismiss, HTC argues that Plaintiff Motiva Patents, LLC ("Motiva") has failed to plead, with adequate specificity, a claim for indirect infringement and willful infringement. Having considered the Motion to Dismiss, and for the reasons set forth herein, the Court finds the Motion should be and hereby is **DENIED**.

## I.    <u>Factual and Procedural Background</u>

Motiva alleges that HTC directly, indirectly, and willfully infringes various claims of United States Patent Nos. 7,292,151 ("the '151 patent"), 7,952,483 ("the '483 patent"), 8,159,354 ("the '354 patent"), 8,427,325 ("the '325 patent"), or 9,427,659 ("the '659 patent") (collectively, the "Asserted Patents"). (Case No. 9:18-cv-179, Dkt. No. 1 at 16 ¶ 68) [hereinafter "Complaint"].[1]

---

[1] The operative Complaint and the Motion to Dismiss were filed in Case. No. 9:18-cv-179-JRG-KFG ("the HTC Case"). Subsequent to the filing of the Motion to Dismiss, the Court consolidated the HTC Case into Lead Case No. 9:18-cv-180-JRG-KFG ("the Sony Case"). (*See* Dkt. No. 20)

The Complaint alleges that Asserted Patents are broadly directed towards "systems, including video game systems, for tracking a user's movement, position, and/or orientation." (*Id.* at 2 ¶ 7).

> Specifically, the [patented] systems include one or more hand-held transponders that are in communication with a processing system, such as a computer. Using sensors located on the transponder, such as gyroscopes and accelerometers, along with external sensors, the transponder's movement, position, and orientation are tracked and portrayed on a digital display. The transponder can also include buttons or other input mechanisms that enable the user to manipulate virtual objects in 3D.

(*Id.*) Motiva alleges that various HTC products both directly and indirectly infringe the Asserted Patents. In addition to a general allegation that HTC sells infringing products, Motiva identifies a number of products that are specifically alleged to infringe the Asserted Patents, including HTC's "Vive, Vive Pro, and Vive BE Virtual Reality System (including, for example, the Controller(s), 'Lighthouse' Base Stations, Wireless Adapter, and/or Tracker(s) with accompanying peripherals) ('Accused Vive Products')." (*Id.* at 3 ¶ 10). Motiva's Complaint includes a short and plain statement explaining how the Accused Vive Products infringe the Asserted Patents. The Complaint specifically identifies the hardware involved in the Accused Vive Products that is accused of infringement. The Complaint recites:

> 64. The accused products include a first **hand-held game controller** comprised of an accelerometer, a **transmitter that sends wireless signals** to the remote processing system, a **receiver that receives wireless signals** from the remote processing system, a **user input device on the exterior of the first hand-held game controller**, an **output device**, a **data storage memory**, and a **processing system in communication with the accelerometer, transmitter, receiver, user input device, output device, and data storage memory**.

---

(consolidating cases). The remaining briefing on the Motion to Dismiss—including Motiva's response (Dkt. No. 27), HTC's Reply (Dkt. No. 28), and Motiva's Surreply (Dkt. No. 29)—was filed in the Sony Case pursuant to its designation as Lead Case. Accordingly, unless otherwise expressly specified, docket numbers refer to the docket in the Sony Case. Where the Court is referencing the Motion to Dismiss or operative Complaint, the Court will indicate the HTC Case number in addition to the docket number.

(*Id.* at 15 ¶ 64) (emphasis added). The Complaint also includes a description of the software processing system embodied in the Accused Vive Products, as well as the tasks performed by that software which are alleged to infringe. The Complaint recites:

> 65. The accused products include a processing system programmed with ***one or more software routines executing*** on the processing system to: 1) ***receive input relating to motion of the first hand-held game controller*** and ***provide data to the output device*** for outputting feedback ***based on the motion*** of the first hand-held game controller; 2) ***receive user input data from the user input device*** and, ***and in response to the user input data***, ***output control data for communication*** to the remote processing system; 3) ***output data for communication to the remote processing system for controlling motion of a first virtual object displayed in a computer generated virtual environment*** displayed on a remote display and ***where the motion of the first virtual object is in proportion with the motion of the first hand-held game controller***.

(*Id.* at 15 ¶ 65) (emphasis added). The Complaint further offers illustrative photographs of the Accused Vive Products to demonstrate how the accused features interact:



(https://www.vive.com/us/product/vive-virtual-reality-system/)

(*Id.* at 14).

Motiva includes a separate section addressed to its "allegations regarding indirect infringement." (*Id.* at 16). Motiva alleges indirect infringement under a theory of induced infringement and a theory of contributory infringement. (*Id.* at 16 ¶ 68; *id.* at 17 ¶ 70). For both

theories of indirect infringement, the Complaint alleges pre-suit knowledge and post-suit knowledge of the Asserted Patents. Motiva relies on an allegation of willful blindness to demonstrate that HTC's knowledge of the Asserted Patents. The Complaint alleges that:

> Defendant *has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others)*, and thus has been willfully blind of Motiva's patent rights.

(*Id.* at 18 ¶ 72) (emphasis added). In addition, specific to post-suit knowledge, the Complaint alleges that HTC "has knowledge of the Asserted Patents at least as of the date when it was notified of the filing of this action." (*Id.* at 18 ¶ 71).

With respect to its theory of induced infringement, Motiva alleges that HTC took specific, affirmative, and intentional steps to induce infringement. The Complaint recites:

> Defendant took active steps, directly and/or *through contractual relationships with others*, with the specific intent to cause them to use the accused products in a manner that infringes one or more claims of the patents-in-suit, including, for example, Claim 28 of the '151 Patent, Claim 44 of the '483 Patent, Claim 32 of the '354 Patent, Claim 1 of the '325 Patent, and Claim 45 of the '659 Patent. *Such steps by Defendant included, among other things, advising or directing customers and end-users to use the accused products in an infringing manner; advertising and promoting the use of the accused products in an infringing manner; and/or distributing instructions that guide users to use the accused products in an infringing manner*. Defendant is performing these steps, which constitute induced infringement with the knowledge of the Asserted Patents and with the knowledge that the induced acts constitute infringement. *Defendant is aware that the normal and customary use of the accused products by Defendant's customers would infringe the Asserted Patent*. Defendant's inducement is ongoing.

(*Id.* at 16 ¶ 68) (emphasis added); (*see also id.* at 16–17 ¶ 69).

Further, with respect to its theory of contributory infringement, Motiva alleges that HTC's products contain a software processing system specifically designed in a manner that has no substantial noninfringing uses. The Complaint alleges:

> Defendant has also indirectly infringed by contributing to the infringement of the Asserted Patents. Defendant has contributed to the direct infringement of the Asserted Patents by the end-user of the accused products. ***The accused products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe the Asserted Patents***, including, for example, Claim 28 of the '151 Patent, Claim 44 of the '483 Patent, Claim 32 of the '354 Patent, Claim 1 of the '325 Patent, and Claim 45 of the '659 Patent. ***The special features include, for example, a processing system that receives wireless signals from a remote communication device and determines movement information for the remote communication device that is used in a manner that infringes the Asserted Patents***. The special features constitute a material part of the invention of one or more of the claims of the Asserted Patents and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

(*Id.* at 17–18 ¶ 70) (emphasis added). Finally, Motiva alleges that HTC's infringement is willful. Motiva alleges that HTC's "direct and indirect infringement of the Asserted Patents is, has been, and continues to be willful, intentional, deliberate, and/or in conscious disregard of Motiva's rights under the patent." (*Id.* at 18 ¶ 74).

On December 17, 2018, HTC brought the present Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). HTC argues that Motiva has failed to allege adequate factual support for indirect infringement in three respects: HTC's knowledge of the Asserted Patents; HTC's intent to induce infringement; and the existence of substantial noninfringing uses for HTC's products. HTC also claims that Motiva has failed to plead adequate factual support for willful infringement. Accordingly, HTC asks the Court to dismiss Motiva's "both pre- and post-suit" claims for induced, contributory, and willful infringement. (Dkt. No. 18 at 10, 12, 13).

## II.  Legal Standard

### A.  Motion to Dismiss

This Court applies Fifth Circuit law to the procedural aspects of a motion to dismiss. *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015) ("We apply regional circuit law to the review of motions to dismiss."). "Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint if the complaint 'fail[s] to state a claim upon which relief can be granted.'" *Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*, 170 F. Supp. 3d 928, 935 (E.D. Tex. 2016) (Bryson, J.) (quoting Fed. R. Civ. P. 12(b)(6)). "The question resolved on a motion to dismiss for a failure to state a claim is not whether the plaintiff will ultimately prevail, 'but whether [the] complaint was sufficient to cross the federal court's threshold.'" *Id.* (quoting *Skinner v. Switzer*, 562 U.S. 521, 530 (2011)). "[A] plaintiff is generally required to provide 'only a plausible "short and plain" statement of the plaintiff's claim . . . '" *Id.* at 936 (quoting *Skinner*, 562 U.S. at 530; Fed. R Civ. P. 8(a)(2)) (alteration in original). "The 'short and plain' statement does 'not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted.'" *Id.* (quoting *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014)).

In evaluating a motion to dismiss under Rule 12(b)(6), the Court must "accept all well-pleaded facts in the complaint as true and view the facts in the light most favorable to the plaintiff." *O'Daniel v. Indus. Serv. Sols.*, 922 F.3d 299, 304 (5th Cir. 2019). As such, courts "are not authorized or required to determine whether the plaintiff's plausible inference . . . is equally or more plausible than other competing inferences . . . ." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 267 (5th Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

After drawing every reasonable inference in favor of the plaintiff, "the court must then decide whether those facts state a claim for relief that is plausible on its face." *Script*, 170 F. Supp.

3d at 935 (citing *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 219 (5th Cir. 2012)). "Asking for plausible grounds *does not* impose a probability requirement at the pleading stage . . . ." *Twombly*, 550 U.S. at 556 (emphasis added). Nor does the plausibility standard authorize courts "to look behind [a complaint's] allegations and independently assess the likelihood that the plaintiff will be able to prove them at trial." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 803 n.44 (5th Cir. 2011)).

Instead, the plausibility standard is met when the complaint pleads "enough fact to raise a reasonable expectation that discovery will reveal evidence" in support of the alleged claims. *Twombly*, 550 U.S. at 556; *accord id.* at 559 (explaining that claims should only be dismissed at the pleading stage when there is "no 'reasonably founded hope that the [discovery] process will reveal relevant evidence'" (quoting *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005))); *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1341 (Fed. Cir. 2012) ("As the Supreme Court has explained, the plausibility requirement is not akin to a 'probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged." (quoting *Twombly*, 550 U.S. at 556)). Thus, particularly where the relevant information is beyond the access of the plaintiff, courts should generally permit discovery to proceed unless the complaint recites no more than sheer speculation about the plaintiff's entitlement to relief. *See Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) ("The factual allegations in the complaint need only 'be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" (quoting *Twombly*, 550 U.S. at 555)); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining

whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

In evaluating a motion to dismiss, the Court may review only "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *PPS Data, LLC v. Jack Henry & Assocs., Inc.*, Case No. 2:18-cv-7-JRG, Dkt. No. 156, at 19 (E.D. Tex. Sept. 6, 2019) (quoting *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019)).

With these principles in mind, the Court turns to the question of whether Motiva has adequately stated a claim for induced, contributory, and willful infringement.

## B.  Indirect Infringement

### 1.  *Induced Infringement*

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). "[I]nducement can be found where there is [e]vidence of active steps taken to encourage direct infringement." *Barry v. Medtronic, Inc.*, 914 F.3d 1310, 1334 (Fed. Cir. 2019) (quoting *Vanda Pharm. Inc. v. W.-Ward Pharm. Int'l Ltd.*, 887 F.3d 1117, 1129) (alterations in original). These "active steps" include "advertising an infringing use," "instructing how to engage in an infringing use," and assisting in performing an infringing use. *Id.* at 1334 (identifying the defendant's employees, who provided technical support for customers performing the infringing acts, as evidence supporting induced infringement); *see also Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1204 (Fed. Cir. 2017) (identifying "instruction manuals" that taught an infringing uses to demonstrate both the defendant's intent to induce infringement and as circumstantial evidence that the defendant's customers were actually induced to directly infringe); *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1362–63 (Fed. Cir. 2006)

("instruction sheets" provided by the defendant); *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272 (Fed. Cir. 1986) (same); *accord* Robert A. Matthews, Jr. 2 *Matthews Annotated Patent Digest* § 10:62 (2019) ("Evidence that a defendant provide advertisements, marketing, materials and efforts, or otherwise promoted using a product in an infringing manner can support a finding of inducing infringement."). "Common sense indicates that advertising that your product can be used in conjunction with [an infringing system] . . . gives rise to a reasonable inference that you intend to induce your customers to accomplish these benefits through utilization of the patented method." *In re Bill of Lading*, 681 F.3d 1323, 1341–42 (Fed. Cir. 2012).

Inducement also has a knowledge requirement. Specifically, "[i]nduced infringement requires that the defendant knew about the patent and that the induced acts would amount to patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015); *see also Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011).

The Supreme Court has repeatedly confirmed that willful blindness may supply the requisite knowledge for induced infringement. *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 824 F.3d 1344, 1347 (Fed. Cir. 2016) ("*Commil*, in reaffirming *Global–Tech*, also necessarily reaffirmed that willful blindness can satisfy the knowledge requirement for active inducement under § 271(b) (and for contributory infringement under § 271(c)), even in the absence of actual knowledge.") (citing *Global-Tech*, 563 U.S. at 768; *Commil*, 135 S. Ct. at 1926); *see also Global-Tech*, 563 U.S. at 770 (affirming finding of induced infringement where a defendant "willfully blinded itself to the infringing nature of the sales it encouraged" its customers "to make"); *accord Vanda Pharm. Inc. v. W.-Ward Pharm. Int'l Ltd.*, 887 F.3d 1117, 1129 (Fed. Cir. 2018) ("Circumstantial evidence can support a finding of specific intent to induce infringement.").

The Supreme Court explained that "[t]he traditional rationale" for treating willful blindness as a form of knowledge "is that defendants who behave in this manner are just as culpable as those who have actual knowledge." *Global-Tech*, 563 U.S. at 766. Additionally, the doctrine of willful blindness recognizes that "persons who know enough to blind themselves to direct proof of critical facts in effect have actual knowledge of those facts." *Id.* After reviewing "the long history of willful blindness and its wide acceptance in the Federal Judiciary," the Court explained that willful blindness, in the context of induced infringement, has two elements: "(1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." *Id.* at 768. Accordingly, conduct that qualifies as willfully blind to the existence and potential infringement of the asserted patents is sufficient to satisfy the knowledge requirement for induced infringement. *See id.*

2. *Contributory Infringement*

> Contributory infringement occurs if a party sells or offers to sell, a material or apparatus for use in practicing a patented process, and that "material or apparatus" is material to practicing the invention, has no substantial non-infringing uses, and is known by the party "to be especially made or especially adapted for use in an infringement of such patent." To state a claim for contributory infringement, therefore, a plaintiff must, among other things, plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses.

*In re Bill of Lading*, 681 F.3d at 1337 (citations omitted) (citing 35 U.S.C. § 271(c)); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.,* 424 F.3d 1293, 1312 (Fed. Cir. 2005); *Golden Blount,* 365 F.3d at 1061).

Contributory infringement may be shown by demonstrating that an entire accused product has no substantial noninfringing uses. *Id.* at 1337. It may also be shown by demonstrating that a specific component of that accused produced has no substantial noninfringing uses. *Id.*

Specifically, the Federal Circuit has explained that a specific component may give rise to contributory infringement even when the *entire product* has substantial noninfringing uses.

> It thus follows that [a defendant] should not be permitted to escape liability as a contributory infringer merely by embedding that [infringing component] in a larger product with some additional, separable feature before importing and selling it. If we were to hold otherwise, then so long as the resulting product, as a whole, has a substantial non-infringing use *based solely on the additional feature,* no contributory liability would exist despite the presence of a component that, if sold alone, plainly would incur liability.

*Id.*

Software may constitute the relevant component for purposes of contributory infringement. When interpreting the term "component" in context of § 271(f), the Supreme Court held that software—understood as code embodied in a computer-readable medium—qualified as an infringing "component" of a patented invention. *Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 447–48 (2007). Consistent with that statutory interpretation, the Federal Circuit has recognized software as a "component" that may give rise to contributory infringement under § 271(c). *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009) (finding contributory infringement based on a software tool that was embodied in a computer-readable medium even though neither the medium nor the entire software package were alleged to contributorily infringe).

In addition, contributory infringement also requires the defendant to have had knowledge that the product or component it sells is "especially made or especially adapted for use in an infringement" of an asserted patent. *Lucent Techs.*, 580 F.3d at 1320. As with induced infringement, willful blindness may satisfy the knowledge requirements for contributory infringement. Though *Global-Tech* addressed willful blindness in the context of induced infringement under § 271(b), the Federal Circuit has confirmed that the holding in *Global-Tech* also applies to "contributory infringement under § 271(c)." *Warsaw Orthopedic*, 824 F.3d at 1347.

Accordingly, a well-pleaded allegation of willful blindness is sufficient to adequately allege the knowledge requirements for contributory infringement.

The requisite knowledge may also be circumstantially inferred from the fact that the accused product or component has no substantial noninfringing uses. In applying the Supreme Court's description of a "substantial noninfringing use" in *Metro–Goldwyn–Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005), the Federal Circuit explained:

> The *Grokster* Court thus made clear that the purpose of the "substantial noninfringing use" exception of § 271(c) is to allow determination of instances where the intent to infringe may be presumed based on the distribution of a product that has an unlawful use. *Id.* at 932–33, 125 S. Ct. 2764. When a manufacturer includes in its product a component that can *only* infringe, the inference that infringement is intended is unavoidable. While selling a potentially infringing product where each component part thereof has a substantial lawful use may well be "equivocal," *id.* at 932, 125 S. Ct. 2764, it is entirely appropriate to presume that one who sells a product containing *a component that has no substantial noninfringing use* in that product does so with the intent that the component will be used to infringe.

*Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1338 (Fed. Cir. 2008) (emphasis in original). In other words, when a defendant has designed a product that does ***nothing*** other than infringe an asserted patent, it is at least ***plausible*** to infer that the defendant knew of the asserted patent and intended its products to perform in a manner that was infringing. *See id.*

### III.  Discussion

### 1. Induced Infringement

#### a.  Intent to Induce

HTC argues that Motiva has failed to adequately allege that Motiva intended to induce its customers to use the products in an infringing manner. Specifically, HTC claims that Motiva's Complaint fails to state a claim because Motiva does not identify specific direct infringers by

name, and because Motiva does not specifically identify what "actual, specific steps" HTC took to encourage infringement.

HTC acknowledges that Motiva identifies "end-users" of the Accused Vive Products as infringers. HTC further does not dispute that that Motiva includes allegations that HTC provides (1) instruction manuals for using the Accused Vive Products in an infringing manner; (2) directions to customers and end-users for using the Accused Vive Products in an infringing manner; and (3) advertisements and promotional materials for infringing uses of the Accused Vive Products. HTC argues that these allegations are insufficiently specific, and that Motiva must identify additional detail about both the identity of the customers, and the nature of the inducing acts.

The Court rejects such arguments. The Federal Circuit has expressly rejected the argument that a plaintiff must specifically identify customers in the complaint in order to state a claim. In *In re Bill of Lading*, the Federal Circuit explained:

> This court has upheld claims of indirect infringement premised on circumstantial evidence of direct infringement by unknown parties. . . . Given that a plaintiff's indirect infringement claims can succeed at trial absent direct evidence of a specific direct infringer, we cannot establish a pleading standard that requires something more. To state a claim for indirect infringement, therefore, a plaintiff need not identify a *specific* direct infringer if it pleads facts sufficient to allow an inference that at least one direct infringer exists.

681 F.3d at 1336 (emphasis in original). HTC does not challenge that Motiva has well-pleaded allegations of **direct** infringement in the Complaint. (*See* Complaint at 15 ¶¶ 64–65) (alleging specific facts in support of direct infringement). Accordingly, drawing all reasonable inferences from the well-pleaded allegations of direct infringement, the Court finds that Motiva's Complaint "pleads fact[s] sufficient to allow an inference that at least one direct infringer exists." *See In re Bill of Lading,* 681 F.3d at 1336. Accordingly, the Court rejects HTC's challenge to Motiva's Complaint on this basis.

The Court also rejects HTC's second argument that Motiva has not pled sufficiently specific acts of inducement. HTC argues the Court should require—at the pleading stage—identification of specific excerpts from instruction manuals identified in the Complaint; specific instructions to customers; or specific content of advertisements in order to state a claim. The requirements proposed by HTC are inconsistent with *Twombly*, which cautions courts not to transform the plausibility standard into a probability standard. *Twombly*, 550 U.S. at 556. *Twombly* simply requires enough facts to rise above the level of sheer speculation, such that there is "a reasonable expectation that discovery will reveal evidence" supporting a claim for relief. *Id.*

In this context, *Twombly* is met when a plaintiff identifies a specific class of information that it expects discovery will reveal. *James v. J2 Cloud Servs., LLC*, 887 F.3d 1368, 1372 (Fed. Cir. 2018) ("[O]n a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim."[2]) (applying Fed. R. Civ. P. 12(b)(1)). In this case, Motiva has identified at least three specific classes of information relevant to induced infringement: (1) instruction manuals for using the Accused Vive Products; (2) communications "directing customers and end-users" to use the Accused Vive Products in an infringing manner; and (3) advertisements and promotional materials for uses of the Accused Vive Products in an infringing manner.

By identifying specific classes of information, Motiva makes a ***plausible*** showing that discovery will reveal evidence—specifically, those three classes of evidence—in support of Motiva's inducement claims. Having alleged that those classes of evidence contain instructions on

---

[2] Though this principle is most frequently invoked in context of Article III standing, it is not unique to standing, and instead flows from the requirement that the court "construe[] all factual disputes in favor of the non-moving party" in a challenge made "at the pleading stage." *J2 Cloud Servs.*, 887 F.3d at 1372.

how to infringe—allegations the Court must take as true—Motiva has gone beyond mere speculation. *Twombly*, 550 U.S. at 555 (factual allegations suffice if they rise above "the speculative level"). Indeed, the Court does not need to speculate about what evidence discovery may reveal, because Motiva has identified precisely what it expects discovery will reveal: HTC's manuals, communications, and advertisements for the three specifically-identified Accused Vive Products that induce "customers" as well as "end-users" to infringe five specifically-identified asserted claims. (Complaint at 16 ¶ 68) (alleging induced infringement of "one or more claims of the patents-in-suit, including, for example, Claim 28 of the '151 Patent, Claim 44 of the '483 Patent, Claim 32 of the '354 Patent, Claim 1 of the '325 Patent, and Claim 45 of the '659 Patent").

HTC's "complaints concerning lack of detail ask for too much. There is no requirement for [a patentee] to 'prove its case at the pleading stage.'" *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (alteration in original). Motiva need not identify what the manuals specifically say, how the communications specifically instructed customers, which customers were specifically instructed, or which advertisements HTC published. *See id.* To require such granular information would "effectively require[] [Motiva] to prove, pre-discovery, the facts necessary to win at trial." *Citizens for Responsibility & Ethics in Washington v. Trump*, No. 18-474, 2019 WL 4383205, at *6 (2d Cir. Sept. 13, 2019). That is not the law. Instead, Motiva need only identify the class of information which it reasonably expects will be revealed through discovery in support of its claims.

HTC relies primarily on *Core Wireless Licensing S.A.R.L. v. Apple Inc.* to claim that more detail is required. No. 6:14-CV-752-JRG-JDL, 2015 WL 4910427, at *4 (E.D. Tex. Aug. 14, 2015). HTC interprets *Core Wireless* to require specific excerpts from the instruction manuals identified in the Complaint, or specific instructions contained therein, in order to state a claim.

HTC's interpretation of *Core Wireless* is misplaced. *Core Wireless* itself recognized that "the provision of instructions by an accused infringer may indicate specific intent to induce infringement." *Id.* However, *Core Wireless* dismissed the complaint for "failing to allege **any** facts . . . even at a basic level," that were specific to the defendant. *Id.* (emphasis added). That decision did not, however, require the level of granularity proposed by HTC. It did not—and could not—have required identification of specific customers, specific excerpts from the instruction manuals, or specific instructions contained therein. *See, e.g.*, *In re Bill of Lading*, 681 F.3d at 1336. HTC's interpretation of *Core Wireless* to the contrary is a misreading that would conflict with Federal Circuit and Supreme Court precedent.

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Common sense illustrates why the information disparity between parties is relevant in deciding what level of detail should be required. For example, Motiva's allegation that HTC has been "directing customers and end-users" to use the Accused Vive Products in an infringing manner will necessarily be informed by the discovery process. (Complaint at 16 ¶ 68). Before discovery, it is plausible that *only* HTC would have access to its individualized communications with customers and end-users. Without discovery of HTC's communications, Motiva could not reasonably identify specific communications, specific instructions within those communications, or specific customers who received communication, unless HTC deliberately made them publicly available.[3]

---

[3] Accordingly, HTC's proposed approach would create a perverse incentive—it would reward defendants who were secretive about infringing conduct, while punishing defendants who were transparent about their conduct.

By contrast, since the Court must accept that "the normal and customary use of the accused products by Defendant's customers would infringe" the Asserted Patents—an allegation that HTC does not challenge as insufficient—then it is plausible that discovery into HTC's customer support communications will reveal evidence supporting Motiva's inducement claim. (*See id.*). Accordingly, the Court finds that Motiva has pled a sufficient factual predicate to allege that HTC took active steps to induce infringement.

### b. Knowledge of the Patents

HTC argues that Motiva has failed to adequately allege that HTC had knowledge of the Asserted Patents. HTC also argues that Motiva's factual allegations of willful blindness are insufficiently specific and otherwise "unsupported" as an evidentiary matter.

The Court finds that Motiva has adequately alleged knowledge in the form of willful blindness. While Motiva does not allege actual knowledge for the pre-suit period,[4] Motiva is not required to do so. *Warsaw Orthopedic*, 824 F.3d at 1347 (recognizing that the Supreme Court has repeatedly held that willful blindness can supply the requisite knowledge for indirect infringement) (citing *Global-Tech*, 563 U.S. at 768; *Commil*, 135 S. Ct. at 1926). Thus, the Court turns to whether Motiva's allegation of willful blindness is well-pled.

---

[4] Motiva alleges actual knowledge of the Asserted Patents for the post-suit period of time, on the basis that the Complaint provided HTC with knowledge of the Asserted Patents and infringement allegations related thereto. *See Script*, 170 F. Supp. 3d at 937 ("[A] complaint provides sufficient notice of the existence of the patent-in-suit to support a claim of indirect infringement as to conduct following the filing of the initial complaint in the case."); 35 U.S.C. § 287(a) ("In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that **the infringer was notified of the infringement and continued to infringe thereafter**, in which event damages may be recovered only for infringement occurring after such notice. **Filing of an action for infringement shall constitute such notice.**") (emphasis added).

The Court concludes that Motiva has sufficiently alleged a factual basis for willful blindness.[5] The Complaint includes two factual allegations addressed to willful blindness, each of which is independently sufficient to satisfy the plausibility standard under *Twombly*.

First, Motiva alleges a specific policy which gives rise to willful blindness. Namely, Motiva alleges that HTC "has a policy or practice of not reviewing the patents of others." (Complaint at 18 ¶ 72). Creating a policy prohibiting review of patents is a specific kind of "deliberate action[] to avoid learning" of potential infringement. *See Global-Tech*, 563 U.S. at 768. At the pleadings stage, the Court must accept as true Motiva's allegation that HTC has such a policy. *Wooten*, 788 F.3d at 498. ("The factual allegations in the complaint need only 'be enough to raise a right to relief above the speculative level, ***on the assumption that all the allegations in the complaint are true (even if doubtful in fact)***.'" (quoting *Twombly*, 550 U.S. at 555)). Accordingly, Motiva's allegation raises "a reasonable expectation that discovery will reveal evidence" of the nature, scope, and wording of that policy, in support of Motiva's claims of willful blindness. *Id.* However, that level of granularity is not required at the pleading stage. *Twombly*, 550 U.S. at 556. *Twombly* requires, in the context of willful blindness, no more than an allegation that a specific, willfully-blind policy exists. *See Wooten*, 788 F.3d at 498; *Twombly*, 550 U.S. at 555. Since Motiva has alleged that HTC has such a specific policy—a policy prohibiting review of patents—Motiva has plausibly alleged that HTC was willfully blind.

---

[5] The Court summarily rejects HTC's argument that the allegations in the Complaint are "unsupported" as an evidentiary matter. It is black letter law that a court evaluating a motion to dismiss under Rule 12(b)(6) must "accept all well-pleaded facts in the complaint as true and view the facts in the light most favorable to the plaintiff." *O'Daniel*, 922 F.3d at 304. A motion to dismiss is not a license "to look behind [a complaint's] allegations and independently assess the likelihood that the plaintiff will be able to prove them at trial." *Huggins Realty*, 634 F.3d at 803 n.44. Accordingly, the Court rejects HTC's evidentiary challenge.

Second, Motiva alleges the HTC performed specific acts to implement and enforce its policy of willful blindness. Specifically, Motiva alleges that HTC executed its policy prohibiting review of patents by "instructing its employees to not review the patents of others." (Complaint at 18 ¶ 72). Similar to the allegations related to the existence of HTC's policy, these allegations plausibly suggest that additional discovery will reveal evidence in support of Motiva's claim. *Twombly*, 550 U.S. at 556. Motiva's allegations plausibly suggest that discovery will reveal what instructions were given by HTC, to whom they were given, and whether HTC's employees complied. *Id.* at 556. Accordingly, Motiva has adequately alleged willful blindness on this factual basis as well.

In sum, the Court concludes that the requirements of *Twombly* are met when a plaintiff identifies the existence of a specific policy of willful blindness or specific acts of willfully blind conduct. Either factual allegation—the **existence** of the policy or its **implementation** in the form of specific acts of willfully blind conduct—is sufficient to state a claim at the pleading stage. Taken together, the combination of allegations more than suffices to "'to cross the federal court's threshold.'" *Script*, 170 F. Supp. 3d at 935 (quoting *Skinner*, 562 U.S. at 530).

## 2. Contributory Infringement

### a. Knowledge

HTC's arguments for the knowledge element of contributory infringement mirror its arguments for the knowledge element of induced infringement. For the same reasons described above, the Court finds that Motiva has adequately pled the knowledge element of contributory infringement.

The Federal Circuit's decision in *Ricoh Co. v. Quanta Computer Inc.* supports this holding. *See* 550 F.3d at 1338. *Ricoh* suggests that a well-pled allegation addressed to the lack of substantial

noninfringing uses is sufficient to satisfy the knowledge element of contributory infringement. *Ricoh* explain that "[w]hen a manufacturer includes in its product a component that can *only* infringe, ***the inference that infringement is intended is unavoidable***." *Id.* (latter emphasis added). Accordingly, "it is entirely appropriate to presume that one who sells a product containing *a component that has no substantial noninfringing use* in that product does so with the intent that the component will be used to infringe." *Id.* (citing *Grokster*, 545 U.S. at 932) (emphasis in original). An inference that is "unavoidable" for purposes of a motion for summary judgment is also "plausible" for purposes of a motion to dismiss. *See id.* at 1327 (vacating order granting summary judgment of noninfringement with respect to induced infringement).

For purposes of a motion to dismiss under 12(b)(6), a well-pled allegation that an accused product (or its component) has "no substantial noninfringing uses" is independently sufficient to plead the knowledge element of contributory infringement. *See id.* at 1338. Since the Court finds that Motiva has adequately pled that the Accused Vive Products include a component that has no substantial noninfringing uses, *see infra* Section III.2.b, the Court concludes that Motiva has adequately pled the knowledge element of contributory infringement.

### b. Substantial Noninfringing Uses

HTC argues that Motiva has failed to adequately identify a product or component with no substantial noninfringing uses. HTC states that the Complaint "does not even refer to any particular accused product." (Case No. 9:18-cv-179, Dkt. No. 18 at 11). HTC also suggests that it was improper for Motiva to identify the accused component by, in its view, "simply parrot[ing] the language of a single claim limitation from among the five asserted patents." *Id.* HTC relies on this Court's decision in *Core Wireless* to suggest that more granularity is required. *Id.* (citing *Core Wireless*, 2015 WL 5000397, at *5).

Having considered HTC's arguments, the Court finds that Motiva has adequately alleged that the Accused Vive Products contain a software component with no substantial noninfringing uses. Specifically, the Complaint identifies the relevant accused software component as "a processing system that receives wireless signals from a remote communication device and determines movement information for the remote communication device that is used in a manner that infringes the Asserted Patents" without substantial noninfringing uses. (Complaint at 17 ¶ 70).

The Court is not persuaded by either of HTC's arguments. With respect to HTC's first argument, HTC is factually mistaken—as Motiva points out in its response to the Motion to Dismiss, the Complaint *does* specifically refer to the three Accused Vive Products. (*Id.* ("***The accused products*** have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe the Asserted Patents . . . .")); (*id.* at 3 ¶ 10 (defining the accused products as the "Vive, Vive Pro, and Vive BE Virtual Reality System (including, for example, the Controller(s), 'Lighthouse' Base Stations, Wireless Adapter, and/or Tracker(s) with accompanying peripherals)")). The Court notes that HTC has dropped this argument in its reply brief.

With respect to the second argument, HTC does not dispute that software systems may be the relevant component for contributory infringement. Nor could it. *See Microsoft Corp.*, 550 U.S. at 447–48 (recognizing software systems as a component); *Lucent Techs.*, 580 F.3d at 1320 (same). Nor is it anomalous that the specific noninfringing use identified by Motiva is mirrored in the claims of the Asserted Patents. It would make no sense to identify an infringing use that was *not* reflected in the claims of the Asserted Patents. This is particularly true of software components, which are frequently described by reference to their functionality—e.g., a date-picker tool, *see Lucent Techs.*, 580 F.3d at 1320—especially prior to source code and document review in

discovery. To identify precisely which source code component performs precisely the infringing function is something that discovery will reveal, but it is unrealistic to require such at the pleading stage. *Twombly*, 550 U.S. at 556. "Common sense" confirms that Motiva cannot be required to identify, pre-discovery, what specific source code performs the pertinent accused functionality. *Iqbal*, 556 U.S. at 679. In the context of contributory infringement, the Court holds an accused software component may be identified by its functionality without needing to identify specific source code or other additional detail.[6]

Finally, HTC's reliance upon *Core Wireless* is inapposite. *Core Wireless* did not require the level of granularity proposed by HTC; instead, it was based on a *total* failure of factual description in the complaint. For example, the court explained that "Core Wireless does not identify the general functionality of the respective patents" or "the hardware and/or software components it accuses," such that the court could not find adequate factual support in the complaint. *Core Wireless*, 2015 WL 5000397, at *5. By contrast, in this case, Motiva has identified a specific software system as a component, and the role that software system plays in the Accused Vive Products.

Accordingly, the Court finds that Motiva has adequately pled the existence of a software component with no substantial noninfringing uses.

---

[6] Having plausibly alleged that HTC's products have a software component that maps upon a claim limitation, the Court finds that Motiva has also alleged a lack of substantial noninfringing uses. *See Lormand*, 565 F.3d at 267 (citing *Twombly*, 550 U.S. at 556). At this stage, Motiva's allegation that the pertinent software does not perform other functions is enough. *See Twombly*, 550 U.S. at 556. More detail cannot reasonably be required at the pleading stage for a software component, because such detail is likely only to be revealed via discovery. *See Iqbal*, 556 U.S. at 679. Requiring Motiva to ***prove*** that HTC's software component only has a single use—instead of simply alleging as much—would "effectively require[] [Motiva] to prove, pre-discovery, the facts necessary to win at trial." *Citizens for Responsibility & Ethics in Washington*, 2019 WL 4383205, at *6.

### 3. Willful Infringement

HTC argues that Motiva failed to plead a sufficient factual predicate to state a claim for willful infringement. HTC argues that even a well-pled allegation of willful blindness is insufficient to state a claim for willful infringement. The Court disagrees, and finds that a well-pled claim for willful blindness is sufficient to state a claim for willful infringement. There are at least three reasons which support such a holding.

First, *Global-Tech* held that willful blindness is a substitute for actual knowledge for purposes of the infringement analysis. *Global-Tech* rested upon two "traditional rationale[s]" for recognizing willful blindness in the context of inducement: a knowledge-based rationale and a culpability-based rationale. *Global-Tech*, 563 U.S. at 766. With respect to the knowledge-based rationale, *Global-Tech* explained that "persons who know enough to blind themselves to direct proof of critical facts *in effect have actual knowledge of those facts*." *Id.* (emphasis added). With respect to the culpability-based rationale, *Global-Tech* explained that "defendants who behave in this manner are just as culpable as those who have actual knowledge." *Id.*; *see also id.* ("'[U]p to the present day, *no real doubt has been cast on the proposition that [willful blindness] is as culpable as actual knowledge*'" (quoting J.J. Edwards, *The Criminal Degrees of Knowledge*, 17 Mod. L. Rev. 294, 302 (1954)) (latter alteration in original) (emphasis added).

For both of these reasons, *Global-Tech* held that willful blindness is a substitute for actual knowledge in context of infringement. Recognizing the equivalence between actual knowledge and willful blindness makes clear why alleging willful blindness is sufficient in this case—if Motiva had alleged *actual knowledge*, it would indisputably state a claim for willful infringement. Since the Supreme Court has explained that willful blindness is a substitute for actual knowledge in the context of infringement, it follows that willful blindness is also a substitute for actual

knowledge with respect to willful infringement. *See id.* at 769. ("Under this formulation, a willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts.").

A contrary holding would produce inconsistent results such that the same infringing act performed by the same defendant could be both willful (sufficient to be willfully blind ***to infringement***) and not-willful (insufficient to ***willfully infringe***). The Court declines to create such an inconsistency.

Second, the culpability rationale underlying *Global-Tech* also supports treating an allegation of willful blindness as sufficient to allege willful infringement. *Global-Tech* repeatedly noted that willful blindness involves serious culpable conduct. *Id.* at 765–66. In fact, acting with willful blindness is "just as culpable as . . . actual knowledge." *Id.* at 766. Consistent with its rationale, the high standard for willful blindness set out by *Global-Tech* requires substantial culpable behavior. The Supreme Court made clear that qualifying culpable conduct "surpasses recklessness and negligence," which do not suffice to state a claim for willful blindness. *Id.* at 769. Instead, the Court's test had "two basic requirements: (1) The defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact. We think these requirements give willful blindness an appropriately limited scope . . . ." *Id.* Thus, conduct which suffices to state a claim for willful blindness inherently—or at least, ***plausibly***—requires culpable conduct.

Third, *Halo*'s description of subjective willfulness suggests that willful blindness is sufficient to state a claim for willful infringement. *Halo* described subjective willfulness as "'*knowing or having reason to know* of facts which would lead a reasonable [defendant] to realize'" that its conduct is "unreasonably risky." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct.

1923, 1933 (2016). *Halo* also recognized that "reckless" conduct—that is, conduct that is reckless to the risk of infringement—may give rise to willful infringement. *Id.* at 1932. By definition, willful avoidance requires *more* than mere recklessness—and *Halo* holds that recklessness alone is enough to show willful infringement. Similarly, *Halo* described "[t]he sort of conduct" justifying a finding of willful infringement as "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id.* These descriptions have a common thread that runs through them: culpability.

The Supreme Court made clear that willful blindness is culpable conduct of the same tenor as the foregoing list. The Supreme Court's two-part test for willful infringement essentially parallels language from *Halo*: it requires a "conscious" belief on the defendant's behalf, *compare Global-Tech,* 563 U.S. at 769 ("defendant must subjectively believe"), *with Halo*, 136 S. Ct. at 1933 (defendant is "conscious"), as well as a "deliberate" act to effectuate that belief, *compare Global-Tech,* 563 U.S. at 769 ("defendant must take deliberate actions"), *with Halo*, 136 S. Ct. at 1933 (defendant's conduct must be "deliberate"). Put simply, willful blindness is an allegation that the defendant should have known of the plaintiff's patents, and took deliberately wrongful steps to ignore them. *Cf. Halo*, 136 S. Ct. at 1933 (defendant's conduct was willful when it acted "'*knowing or having reason to know* of facts which would lead a reasonable [defendant] to realize'" that its conduct was "unreasonably risky"). This is just the type of allegation that *Halo* suggests should suffice. Accordingly, *Halo*'s description of willfulness instructs that a well-pled claim of willful blindness is sufficient to state a claim for willful infringement.

HTC's primary argument against treating an allegation of willful blindness as sufficient is that willful blindness does not involve intentional, affirmative conduct as required by *Halo*. This argument is misplaced. The second prong of *Global-Tech*'s willful blindness test requires a

defendant to engage in intentional, affirmative conduct to blind itself. *Global-Tech,* 563 U.S. at 769. For example, in this case, Motiva alleges that HTC engaged in affirmative conduct by creating a willfully blind policy, and then took additional affirmative steps to police its employees in complying with such policy. Both the act of creating a policy and acts of implementation constitute intentional, affirmative conduct within the ambit contemplated by *Halo*. Since allegations of affirmative conduct are ***required*** to state a claim for willful blindness under the second prong of *Global-Tech*, well-pled allegations of willful blindness generally entail allegations of affirmative conduct. Thus, a well-pled claim for willful blindness embodies an allegation of affirmative conduct. HTC's argument to the contrary is incorrect.

In short, both the holding and the twin rationales of *Global-Tech* suggest that well-pled allegations of *willful* blindness suffice to state a claim for *willful* infringement. The alternative would create a legal quagmire where a defendant's infringing conduct could simultaneously be willful (induced infringement) and not-willful (willful infringement). By contrast, the factual requirements for and culpable nature of willful blindness are squarely consistent with *Halo*'s articulation of subjective willfulness. As a result, this Court finds that a well-pled allegation of willful blindness is sufficient to state a claim for willful infringement. Since Motiva has included well-pled allegations of willful blindness, the Court finds it has also stated a claim for willful infringement.

## IV. <u>Bad Faith Allegations</u>

The Court now briefly addresses HTC's conduct in prosecuting this Motion to Dismiss. In its briefing, HTC alleges that Motiva's indirect and willful infringement claims are made in subjective bad faith. (Case No. 9:18-cv-179, Dkt. No. 18 at 7 n.3). HTC went as far as threatening to file a Rule 11 motion based on its apparent perception that Motiva had no good-faith basis for

alleging willful and indirect infringement. (Case No. 9:18-cv-180, Dkt. No. 27 at 3) ("***HTC has even gone so far as to send a letter to Motiva accusing it of violating Rule 11*** (although only after filing this motion and ***without attaching a Rule 11 motion as required by the rules***).")."); (Case No. 9:18-cv-180, Dkt. No. 27-2 (attaching the Rule 11 Threat Letter from HTC's counsel)); Fed. R. Civ. P. 11(c)(2). In HTC's view, Motiva has no good-faith basis to oppose the present Motion to Dismiss.

As an initial matter, Motiva's opposition has a good-faith basis. Motiva's Complaint states a claim for both willful and indirect infringement. By contrast, the positions taken by HTC in its Motion to Dismiss are inconsistent with or unsupported by existing precedent. In a case like this, a Rule 11 threat is not appropriate.

"[A] Rule 11 violation is a serious thing, and an accusation of such wrongdoing is equally serious." *Intellectual Ventures II LLC v. Fedex Corp.*, Case No. 2:16-cv-980-JRG, Dkt. No. 599, at 12 (E.D. Tex. Mar. 28, 2019) (quoting *Draper & Kramer, Inc. v. Baskin-Robbins, Inc.*, 690 F. Supp. 728, 732 (N.D. Ill. 1988)). Unsupported threats to pursue Rule 11 sanctions obstruct the truth-seeking process, build acrimony between the parties, and frequently waste judicial resources. In the analogous context of inequitable conduct, the Federal Circuit harshly criticized "the habit of charging" personal misconduct as "an absolute plague," noting that some "lawyers seem to feel compelled to make the charge against other reputable lawyers on the slenderest grounds." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1289 (Fed. Cir. 2011) (citing Christian Mammen, *Controlling the "Plague": Reforming the Doctrine of Inequitable Conduct*, 24 Berkeley Tech. L.J. 1329, 1358 (2009); *Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988)). Increased acrimony also has the tendency to increase the expenditure of judicial resources by obstructing compromises that might have been within the reach of more

collegial counsel. There is also a direct and significant expenditure of judicial resources when the Court must address issues relating to the propriety of sanctions—or the threat of sanctions—under Rule 11.

In short, Rule 11 serves a valuable purpose and should be applied in cases where misconduct warrants it. This is not such a case. Conversely, unsupported threats of sanctions are the kind of conduct that courts should properly consider when evaluating whether attorneys' fees should be awarded pursuant to 35 U.S.C. § 285. *See, e.g.*, *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 555 (2014) (recognizing § 285 fees may be appropriate for "litigation misconduct"); *cf. Fedex Corp.*, Case No. 2:16-cv-980-JRG, Dkt. No. 599 at 11–13 (declining to award § 285 fees to a prevailing defendant because of the defendant's litigation misconduct, including a baseless threat of Rule 11 sanctions, because "[l]ike equity, [one] who seeks attorneys' fees under § 285 must have clean hands"); *accord* 35 U.S.C. § 285 (requiring district courts to determine whether an award of attorneys' fees is "reasonable"). Any party who wields the sword of Rule 11 sanctions without a clear basis should remember that such sword can cut both ways.

## V.    Conclusion

Motiva has alleged a sufficient factual basis for willful infringement, contributory infringement, and induced infringement. Motiva adequately alleges the knowledge elements of indirect infringement by alleging a specific policy of willful blindness implemented via specific actions by HTC. Similarly, Motiva adequately alleges intent to induce infringement by identifying HTC's manuals, communications, and advertisements for the three specifically-identified Accused Vive Products as factual predicate for inducement. Further, Motiva adequately alleges that HTC's products contain a component with no substantial noninfringing uses by identifying a specific software system embodied in the Accused Vive Products. Finally, Motiva adequately alleges

willful infringement on the basis of its willful blindness claims. Accordingly, HTC's Motion to Dismiss Plaintiff's Original Complaint Under Rule 12(b)(6) (Dkt. No. 18) is hereby **DENIED**.

**So ORDERED and SIGNED this 27th day of September, 2019.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE